Columbia, April, 1873.

HEARD APRIL TERM, 1873.

## DONALD vs. LIFE INSURANCE COMPANY.

A. held a policy of insurance on his own life which expired on the 5th March, 1871, but which, by its terms, was renewable within thirty days at "the entire option of the company." On April 3d, 1871, A., who was the local agent of the company, wrote a letter to the General Agent enclosing therein the amount of the premium. A. was unwell when he wrote—became quite sick the next day, and became gradually worse until the 7th, when he died. The letter informed the General Agent that the money was sent to pay the renewal premium on A.'s policy, and on the day it was written, was enclosed in a package to be sent by express, A. being the agent of the Express Company. On April 5th, A. gave the package to his wife and instructed her to send it the next day, but it was not sent until the 10th April, reaching the General Agent the same day. The Company refused to accept the premium, and this action was brought by the widow and children of A. against the Company to recover the amount of the policy: *Held*, That the policy was void for non-payment of the premium according to its terms, and consequently that the plaintiffs had no cause of action.

The conditions of a policy of insurance as to payments of annual premiums must be strictly complied with by the insured, or his policy will be void.

### BEFORE ORR, J., AT ANDERSON, FALL TERM, 1872.

The case is stated in the following brief, prepared by counsel for the Supreme Court:

This was an action brought by Ella Donald, Anna A. Donald, and others, the widow and infant children of the late Col. David L. Donald, against the Piedmont and Arlington Life Insurance Company, on a policy insurance for the sum of five thousand dollars on the life of the said David L. Donald.

It appeared from the testimony adduced on the trial that the deceased, on or about the 5th of March, 1869, took out a policy for the sum of five thousand dollars in the said company for life, and that the annual premium was paid thereon for the year ending March 5th, 1870. It also appears by the terms of the policy that after the day named for the renewal, thirty days of grace are allowed within which the annual premiums may be paid. The day specified in the policy being the fifth day of March of each and every year during the continuance of the said policy, the days of grace extended this time to the fourth day of April of each and every year as aforesaid.

The question was as to whether the payment had been made, and the policy renewed for the year within which Col. Donald died. The affirmative of this proposition was maintained by the plaintiffs, and denied by the defendants, and the facts upon which the result of the issue depended were substantially these:

Col. David L. Donald, the deceased, was the agent of the Greenville and Columbia Railroad Company, at Williamston, where he resided. He was also agent of the Express Company, and of the Life Insurance Company of defendants. On Monday evening the 3d of April, 1871, he was sick, suffering from cold and hoarseness. On Tuesday morning, the 4th April, he was too unwell to get up to breakfast, and did not leave the house; during the day he was still sick, but walked out to his store near the railroad depot in the evening. The cars were behind time and he returned to his house about night, before their arrival. He was then very sick, and went immediately to bed, handing his wife at the same time the portfolio in which he carried his express matter, and saying to her that the contents must be sent off the next morning. The portfolio was locked up in his trunk and never removed or opened until after his death. He became worse rapidly, and was so ill on Tuesday morning that his directions about the express matter were forgotten. He continued to grow worse until the evening of Friday, the 7th of April, when he died.

On Monday morning, the 10th April, the portfolio containing the express matter was opened and found to contain three packages—one for the Railroad Company and two express packages sealed in the printed envelopes of the Express Company; one was directed to the "Working Christian," Columbia, and the other to Dr. Isaac Branch, at Abbeville, S. C., the defendant's General Agent. The package was carried on that day, 10th April, 1871, by Messrs. Lark & Herrick, to Dr. Branch, at Abbeville, who received it, and broke the seal in their presence. It contained within a letter, also directed to Dr. Branch, bearing date April 3, 1871, and contained one hundred dollars in money, which, as was stated in the letter, was to pay the renewal premium on his, David L. Donald's policy of life insurance. Dr. Branch having received the letter and money, undertook to submit the same, with a statement of the case, to the Home Office of defendants, in the city of Richmond, Virginia, giving at the same time to Messrs. Lark & Herrick a paper in the nature of an accountable receipt for the same. The defendants declined to accept the money as a renewal of the policy, and it was returned to Messrs. Lark & Herrick, and by the latter handed over to Mrs. Donald, the first named plaintiff in this action.

It was also proven on the trial that Col. Donald, as agent of this Life Insurance Company, was authorized to receive renewal pre-

miums on the policies of others at any time he could get them, and that it was the habit of the company in that community to receive such premiums after the expiration of the time mentioned in the policies, as also of the days of grace, (without question.) The plaintiffs having closed their case, the defendants moved the Court that the plaintiffs be non-suited upon grounds hereinafter stated. The presiding Judge overruled the motion.

The case was submitted to the jury who found for the plaintiffs.

The defendants appealed on the ground, *inter alia*, that the policy was void because of the failure to pay the annual premium which became due on the 5th March, 1871.

*Perrin & Cothran* for appellants :

1. It is a fundamental principle in Life Insurance that the death of the assured, and not the cause of death only, must have happened during the continuance of the risk.—*Lockyer* vs. *Offley*, 1 T. R., 254.

2. By the terms of the contract in this case the annual premiums were to be paid in cash every twelve months after the 5th day of March, 1870, or within thirty days thereafter, within the lifetime of the assured, the payments being annual.

The policy expired on the 5th March, 1871, the day named in the policy, and the risk extended beyond that time only "at the entire option of the company." The days of grace expired on the 4th of April, the assured died on the 7th. If the assured had died on the 3d of April, and the amount of the annual premium had been tendered on that day, the company would not have been bound to accept it ; *a fortiori* then as to the tender made by Lark & Herrick on the 10th.

The following cases dispose of the offer of payment made by them to Dr. Branch.—*Tarleton* vs. *Staniforth*, 5 T. R., 695; *Wait* vs. *Blunt*, 12 East., 183 ; *Simpson* vs. *The Accid. Insurance Company*, 89 E. C. L., 287.

1. The whole frame of the policy shows that every premium was to be paid in the lifetime of the assured. And such is the law. See *Simpson* vs. *Accid. Insurance Company*, cited above.

2. No payment having been made or tendered within the days of grace, or within the lifetime of the assured, to the company or its authorized agent, does the fact of intention, as manifested by the assured, constitute payment in law?

(a) This is a contract relating to personal property, and must be strictly construed. The doctrine of *cy pres* does not apply.—Story's Eq. Jur., §§ 291–1169, *et seq.*

(b) The premium was due on the 5th of March. It is not pretended that there was an effort, or even an intention, of payment at that time.

(c) A part of the contract was that no receipt for payment bound the company, unless signed by the President or Secretary or Actuary of the company. No such receipt has been exhibited; no such receipt was given. .

(d) The assured, who is claimed to have been an agent of the company, must have known this officially as well as by the terms of his policy.

(e) The assured, as agent, could not have given a binding renewal receipt to a third person, under his own hand, much less have renewed his own policy by payment to himself.

(f) After 5th March the continuance of the risk and the acceptance of the premium, if tendered, were at " the entire option of the company."

(g) No opportunity was afforded for the exercise of any such option. .

(h) " If the party meant to drop the insurance and meets with a serious accident within twenty-one days after the year of insurance, (the days of grace in that case), he may, according to your argument, tender the premium, which he never intended to pay, and so make the company liable."—By C. J. Cockburn, to Plaintiff's Counsel, in *Simpson vs. Accidental D. Ins. Co.,* (supra.)

(i) " Is not this the true construction? If the insured chooses to renew the policy, he may do so by paying the premium within twenty-one days (of grace in that case,) provided the Directors do not exercise the option given them of terminating the risk by refusing to receive the money."—*Ib.*

1. The terms of the contract of insurance, having been adopted by the parties, are not varied or controlled by the proof offered for that purpose by the plaintiffs as to usage of other companies, the instructions from agents in Columbia, &c.—*Ruse vs. The Mut. L. Ins. Co.,* 23 N. Y., 516; Reviewing S. C., 26 Barbour, 556.

2. The principle, as established by innumerable decisions, may be stated thus:

" Evidence of usage, though sometimes admissible to add to or

explain, is never so to vary or to contradict, either expressly or by implication, the terms of a written instrument."—1 Smith's Lead. Cas., 413.

3. The practice is pernicious—subversive of the established principles of the law—inexpedient, impolitic and unwise, and is condemned by the ablest Judges.

In *Sonnell* vs. *The Col. Ins. Co.*, Judge Story says : " I am among those Judges who think usage among merchants should be sparingly adopted as rules of Court by Courts of Justice, as they are often founded in mere mistake, and still more often in the want of enlarged and comprehensive views of the full bearing of principles." —2 Sumner, 367.

The acts, on the part of the assured, which are claimed as evidence of his intention to pay, and to be, in fact, tantamount to payment, fall, in point of time, partly within and partly subsequent to the days of grace allowed by the policy.

Grace is defined to be " that which a person is not entitled to by law, but something extended to him as a favor." The term " days of grace," so far as it has received judicial interpretation, is limited in its application to bills or notes. The usual term of *three days*, in the beginning and for a long time, was not demandable by the acceptor or drawer, as of right, but now, under the establishment of the custom of merchants, and the sanction of repeated judicial decisions, is so demandable.—6 Watts and Serg., 179.

In the case cited, 89 E. C. L., (supra,) twenty-one days of grace were allowed ; in the case before the Court thirty days were allowed—both as concessions to the assured and for their convenience—in both cases with certain restrictions and requirements, which formed part and parcel of the concessions. In neither case was it the growth of custom. In both it was matter of contract and agreement, and as such must be construed.

*Reed & Brown*, contra :

1st. It is insisted the renewal premium was paid, or tendered to be paid, or disposed of in such way as to render it equivalent to payment. That, under the circumstances, the question of payment was one depending on the facts, which, having been found by the jury, the result is conclusive.—*Townsend* vs. *Henry*, 9 Rich., 318; *Fried* vs. *Royal Insurance Company of Liverpool*, 47 Barb., 127 ; 2 Wait's Dig., 887 ; *Abrahams & Son* vs. *Kelly & Barrett*, 2 S. C., 235.

2nd. But if payment was neither made or tendered, it was prevented by Providential interference, and the *cestui que trusts* are not to suffer from the hand of Providence laid on their trustee, the assured. "The act of God makes injury to no man."—2 Black's Com., page 122 ; Broom Leg. Max., 113, 114 ; *Welts* vs. *Connecticut Mutual Life Insurance Company*, 46 Barb., 412; 2 Wait's Dig., 887 ; *Baldwin* vs. *N. Y. Life Insurance and Trust Company*, 3 Bosw., 530 ; 2 Wait, 887.

3rd. Payment, or tender of payment, within the time mentioned in the policy, was expressly waived by the acts of appellants, and they have, therefore, nothing to complain of.—*Buckbee* vs. *U. S. Insurance Annuity and Trust Company*, 2 Clinton Dig., 1756, No. 10 ; 18 Barb., 541 ; *Ruse* vs. *Mutual Benefit Life Insurance Company*, 2 Clinton, 1757, No. 13; 26 Barb., 556.

June 21, 1873. The opinion of the Court was delivered by

MOSES, C. J. The testimony in the cause presented no issue of fact for the solution of which the conclusion of the jury was necessary.

The facts may be conceded as established by the evidence adduced on the part of the respondents, and if they do not constitute a sufficient cause of action against the appellants they were entitled to a non-suit. The determination of the case depended on the construction of the policy and of its conditions, which was the contract between the parties, and this was for the Court and not for the jury.

Before entering on what really appears to us the merits of this contention, it may be satisfactory to refer to the position submitted on the argument in behalf of the respondents, which claims the existence of the policy at the death of the assured, by reason of the alleged payment of the premium in his lifetime. There is a distinction between a tender and actual payment itself. The former may sometimes so operate as to place the party making it in a position in which he may be entitled to the full benefit of some condition which was to avail, if within a certain time he made payment of the stipulated sum fixed by the agreement, but it cannot amount to full and complete satisfaction. Here the point relied on was, not that payment of the required premium had been made, but the intention of the assured, by enclosing the money in a package, its direction to the General Agent of the Company, and its presenta-

tion after his death by Herrick and Lake, amounted to a compliance with the stipulations on the performance of which the interest in the policy was preserved to the respondents. This raised a question of law. The facts from which the legal conclusion was to be drawn, were not contested and presented as a proposition purely for the judgment of the Court.

To give, however, to the respondents the full benefit of the acts through which they contend the policy was saved to them, for the purpose of the argument, we will consider what would have been their effect if the assured had been living, and claimed that his policy was still of force by virtue of the transactions which the respondents aver, he being dead, secure to them the benefit of the covenant. "The conditions annexed to a personal contract, like a policy of insurance, must be performed according to the terms used, and the apparent intent of the parties, and are not satisfied by a performance *cy pres.*"—3 Steph., N. P., 2072. Every warranty in the policy is a condition precedent, and the assured must aver and prove performance of it. It is held that a liberal construction must be given to such an instrument in seeking for the true intention of the parties, but if the terms leave no doubt of this, it must be enforced according to their plain meaning.

The following extracts from the policy show so much of its conditions as is necessary for a proper understanding and decision of the case. "The company, in consideration of the first annual payment on the policy, continues the same in force from the 5th day of March, 1869, to the 5th day of March, 1870, and in consideration of the payment of the like sum in cash every twelve months as hereafter stated, and of the annual premium of eighty-six dollars and seventy-five cents, to be paid on or before the            day of                in every year, during the continuance of this policy, (or within thirty days thereafter, within the lifetime of the assured, when the payments are annual,) do assure the life of David Lewis Donald, &c.;" "and it is also understood and agreed, *

* * * or in case the said party contracting for this assurance shall not pay the said premium on or before the several days hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine."

The notice endorsed on the policy, which is made part of the con-

tract, declares that " the premium is payable at the commencement of this risk in one or more payments as within expressed. If the assured desires to alter the mode of payments, application must be made to the company in writing for permission, which the company will grant at its discretion. The premiums are always due on the several days stipulated in the policy, and all risk to the company commences at the time of the actual payment of the first premium, without regard to the date of the policy, (unless otherwise stipulated in the policy), and continues until the day named in the policy for the payment of the next premium, at 12 o'clock noon, and no longer, except that thirty days' grace are allowed, as within provided, where payments are *annual*, but no days of grace on less than annual premium." ·

" No premium will be received by the company continuing any risk after the day named in the policy for the payment of such premium, unless the insured is in perfect health, and the risk continued at the entire option of the company, and no payment of premium is binding on the company, unless the same is acknowledged by a printed receipt, signed by the President, or Secretary, or Actuary of the company. Agents are not authorized to bind the company by the issue of policies or permits, nor give receipts for the renewal of premiums ; neither are they authorized to waive forfeiture, or make, alter or discharge contracts."

The policy expired on the 5th of March, 1871, and the risk could be extended beyond that time only " at the entire option of the company." The days of grace terminated on the 4th of April following—the assured died on the 7th.' The appellants well contend " that if he had died on the 3rd of that month, and the amount of premium had been tendered on that day, the company would not have been bound to accept it." The liability of the company depended on the death of the assured during the continuance of the risk. This ended on the 5th March, 1871, and the extension within the time fixed as days of grace was subject entirely to the will of the company.

The principles decided in *Simpson et al., Executors,* vs. *The Accidental Death Insurance Company,* 88 E. C. L., 257, apply to the case here, and the facts are analogous. The premium there was payable on 22d January in each year, and by one of the conditions endorsed on the policy "the premium was to be paid within 21 days from the day on which the same should first accrue or be-

come due—and that, provided the same should be from time to time paid within such space of 21 days, the policy should not be void, notwithstanding the happening before the expiration of such space of 21 days of the event or events upon the happening whereof the amount secured by the policy should, according to the terms thereof, become payable." By another condition, it was provided "that if the premium should be unpaid for 21 days next after it should become due, the policy should be absolutely void." And it was further (fourthly) provided, "that in every case in which a new premium should become payable, the Directors should be at liberty to terminate the risk by refusing to accept such premium."

A. paid the premiums to the year 1855. On 22d January, 1856, one of the premiums, payable as in the policy mentioned, became due. February 1, 1856, he died from an accident which happened to him on January 27th preceding. It was *held* that there was nothing in the conditions to enable his executors to pay the premium after his death, and that if they had tendered it within the twenty-one days the company would not have been bound to accept it; that the policy was, by reason of the non-payment of the premium within the terms of the policy and conditions, absolutely void, and that the company were not estopped from denying the payment; that neither the plaintiffs (executors) nor the assured (had he been living) would have had an absolute right to keep the policy alive by payment or tender of the premium within the twenty-one days, the fourth condition giving the Directors the option of refusing to continue it or not, at their pleasure. The principles which governed this decision had been applied in *Tarleton, et al.*, vs. *Stanforth, et al.*, 5 T. R., 695, to a case of insurance against loss by fire, and in *Want and Gaskoin* vs. *Blunt, et al.*, 12 East., 183, to one arising out of a policy of life insurance. The reasoning in the cases leave nothing for further elucidation, and are conclusive on the points made here in behalf of the respondents.

Nor can the verdict be sustained upon the presumption that the deceased was a recognized agent of the company, authorized to receive payment of premiums for others, and, therefore, to be held invested with the same right, as to himself, the exercise of which continued his policy. In the first place, the evidence contradicts the inference that he had paid the premium by charging it in his account with the company, for he proposed to send it to the General Agent, not in satisfaction of

money with which he was so charged, but "to pay premium," adding, "if amount is not sufficient, will arrange it when we meet," and the endorsement on the policy (made part of the contract) expressly forbids agents from giving "receipts for the renewal of premiums," and declares that "no payment or premium is binding on the company unless the same is acknowledged by a printed receipt, signed by the President or Secretary, or Actuary of the company." As agent, therefore, he could not have given a binding renewal receipt to a third person, under his own hand, much less have renewed his own policy by a payment to himself.

However reluctant, we are obliged to say that we see no cause of action on the part of the respondents, and the motion for the nonsuit refused by the presiding Judge must prevail, and it is so accordingly ordered.

*Wright*, A. J., and *Willard*, A. J., concurred.